**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EDWARD REEDER,

Petitioner,

v. Case No. 3:20-cv-478-TJC-MCR

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS and FLORIDA ATTORNEY GENERAL,

Respondents.

---

# ORDER

## I. Status

Petitioner Edward Reeder, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, supported by a memorandum. See Docs. 1 and 2. Reeder challenges a judgment Florida's Fourth Judicial Circuit Court entered after Reeder pleaded guilty to robbery in Case No. 2015-CF-763. Reeder is serving a 22-year prison sentence. Respondents filed a response to the petition, see Doc. 12, and Reeder replied, see Doc. 13. This case is ripe for review.

## II. Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic

& Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. §

2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845

(1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""'opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747–748, 111 S. Ct. 2546; Sykes, supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ——, ——, 131 S. Ct. 1120, 1127– 1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ——, —

> –, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that the continued incarceration of one who is actually innocent—a fundamental miscarriage of justice—would otherwise result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even

> in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

**C. Ineffective Assistance of Counsel**

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas

based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill,474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong

presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. Procedural History and Facts

The State of Florida charged Reeder with the robbery of a Dollar General store. Doc. 12-1 at 33. The court appointed the public defender's office to represent Reeder. Id. at 24. The State filed a notice of intent to classify Reeder as an habitual violent felony offender (HVFO). Id. at 28 and 30. On October 26, 2015, Reeder entered a guilty plea without an agreement on the sentence. Id. at 46-47. He also agreed to waive a presentence investigation report. Id. at 48. A month later, Reeder filed a pro se motion to withdraw his plea due to a misunderstanding about his sentencing range, which he blamed on his attorney. Id. at 50-52. Thereafter, Assistant Regional Counsel Amanda Kuhn represented Reeder, and she filed an amended motion to withdraw the guilty plea on Reeder's behalf.

At a pretrial hearing on February 8, 2016, Kuhn informed the court that Reeder wanted to be sentenced that week rather than move forward with his motion to withdraw plea. Id. at 177. The court convened for sentencing on February 10, 2016, and Reeder confirmed he wished to be sentenced without a presentence investigation.

Id. at 127. The court found that Reeder classified as an HVFO and sentenced him to a 22-year prison term with a 10-year mandatory minimum. Id. at 147.

Reeder appealed, but his appointed counsel found no appealable issues and filed an Anders[1] brief. Id. at 306-16. Reeder did not file a pro se brief, and the First District Court of Appeals of Florida ("1st DCA") affirmed without a written opinion. Id. at 322. Reeder filed a state postconviction motion under Florida Rule of Civil Procedure 3.800(b)(2). Id. at 205-07. The postconviction court corrected a scrivener's error in the judgment but otherwise denied Reeder's motion. Id. at 246-50. The 1st DCA affirmed without a written opinion. Id. at 376. Reeder filed a motion to correct illegal sentence under Florida Rule of Civil Procedure 3.800(a). Id. at 328-30. The postconviction court denied it. Id. at 332. Reeder also sought postconviction relief under Florida Rule of Civil Procedure 3.850. Id. at 443-58. The postconviction court denied it, too, id. at 539-43, and the 1st DCA affirmed without a written opinion, id. at 640-41. Reeder's federal habeas petition timely followed.

## IV. Analysis

### A. Ground One

Reeder first asserts Kuhn was ineffective because she did not ask the state court "to address Reeder's motion to withdraw plea or attach a written final order demonstrating that the motion had been voluntarily dismissed." Doc. 1 at 12. Had Kuhn done so, Reeder speculates that the trial court might "have then made a pre-trial offer of its own accord, or explained to Reeder that unless the State waived its

[1] Anders v. California, 386 U.S. 738 (1967).

HVFO notice, a guideline sentence was not permissible." Doc. 1 at 15. Reeder claims he then "would have advised the Court that he wanted a guideline sentence or else he was proceeding to trial." Id. Reeder also claims the criminal judgment is not final under Florida Rule of Criminal Procedure 3.170(1) because his motion to withdraw plea remains pending. But state procedural issues are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("federal habeas corpus relief does not lie for errors of state law.").

Reeder did not raise this ground in state court, and the two-year period to do so has expired. See Fla. R. Crim. P. 3.850(b). He argues the procedural default is excused under Martinez v. Ryan, 566 U.S. 1 (2012). Because Reeder did not have counsel in state collateral proceedings, he may overcome procedural default by "demonstrate[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 13.

Reeder fails to show he has a substantial Strickland claim. The crux of this ground is that Reeder did not know he might be sentenced as an HVFO after pleading guilty. Reeder speculates he would have learned about the potential HVFO designation if Kuhn had asked the court to address his motion to withdraw plea. But "speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). What is more, the record proves that Reeder knew the State filed an HVFO notice and the impact it would have on his

potential sentence when he pleaded guilty on October 26, 2015:

> THE COURT: The State has filed an habitual felony offender notice, so there is a minimum mandatory ten years with this charge, is that correct?
>
> MR. FEUER: That's correct. It would be ten to 30 years, Your Honor.
>
> THE COURT: Ten to 30. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand there's no agreement as to what your sentence would be. We'll pass your case for a sentencing hearing, and you and your attorney and the State can present whatever evidence you would like the Court to consider, do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

Doc. 12-1 at 116. Reeder's claim that he would not have pleaded guilty unless the State waived its HVFO notice is demonstrably false.

Reeder fails to show he has a substantial ineffective-assistance-of-trial-counsel claim. Thus, Martinez does not excuse his failure to exhaust this ground in state court, and it is procedurally barred.

**B. Ground Two**

Reeder next argues Kuhn was ineffective because she failed to advise Reeder he would be sentenced as an HVFO. Reeder claims he would not have pleaded guilty if Kuhn had informed him of the potential HVFO enhancement. The state postconviction court rejected this argument because the record demonstrated that Reeder freely and voluntarily entered his plea after being advised of the range of possible sentences. Doc. 12-1 at 541. The record supports that finding. In the excerpt of the October 26, 2015 transcript block-quoted above, Reeder acknowledged the State's HVFO notice and the

resulting 10- to 30-year sentence range. Doc. 12-1 at 116.

Reeder argues the October 26, 2015 transcript is irrelevant because his allegation of deficient performance is limited to February 10, 2016. Not so. The October 26, 2015 transcript proves Reeder pleaded guilty with the knowledge that he faced a 10- to 30-year sentence. It refutes Reeder's claim that he would not have pleaded guilty if he understood the impact the HVFO notice had on his potential sentence. Thus, Reeder cannot prove prejudice, and the state court's rejection of this ground is consistent with Strickland, notwithstanding the date of the allegedly deficient performance. See Ward, 592 F.3d at 1163 ("a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa"). Ground Two is denied.

**C. Ground Three**

Reeder also argues Kuhn failed to object to a perceived inconsistency between Reeder's plea and the sentence imposed. When the trial court questioned Reeder about his intent to plead guilty on October 26, 2015, the judge referred to the State's HVFO notice as a "habitual felony offender notice." Doc. 12-1 at 116. Reeder asserts the judge "orally pronounced" an "HFO sentence" and argues Kuhn should have objected when the sentencing judge imposed an HVFO sentence rather than a HFO sentence. Doc. 1 at 20. Reeder failed to raise this argument in state court and again relies on the Martinez exception to the procedural bar, so he must demonstrate that this ground is substantial.

This claim is not substantial. The meaning of Reeder's claim that the judge

"orally pronounced…an HFO sentence" is unclear. On October 26, 2015, the judge questioned Reeder to ensure he was knowingly and voluntarily entering a guilty plea. The judge was not "pronouncing" a sentence, and Reeder voiced his understanding that he would be sentenced later. The judge made certain Reeder understood his sentencing range was 10- to 30-years, and the sentence Reeder received fell within that range. A court could not deem Kuhn's performance deficient because she did not raise a frivolous objection, and Reeder suffered no prejudice. Reeder has not raised a substantial ineffective-assistance-of-trial-counsel claim, so this ground is procedurally barred.

**D. Ground Four**

Finally, Reeder argues the sentencing court erred by relying on a 1993 conviction for attempted first degree murder as a predicate for the HVFO sentence because the crime of attempted first degree murder does not exist. The state postconviction court found this ground unsupported by Florida law and refuted by the record:

> Defendant improperly relies upon the Florida Supreme Court's decision in Gray, which held Attempted Felony Murder as legal fiction. State v. Gray, 654 So. 2d 552 (Fla. 1995) (superseded by statute Milton v. State, 161 So.3d 1245 (Fla. 2014); see also Freeman v. State, 698 So. 2d 810, 810 (Fla. 1997) (holding the Supreme Court decision in Gray only applied to cases pending on direct review or not final). In Gray, defendant was convicted of Attempted Felony Murder. Id. at 553. In the instant Motion, Defendant's prior conviction was for Attempted First Degree Murder in case number 45-1992-CF-00575-AXXXX-YX, not Attempted Felony Murder. Furthermore, the record indicates Defendant's 1992 conviction was not set aside in post-conviction or in any other proceedings. Defendant also stipulated to his prior convictions and release date at the sentencing hearing.

Doc. 12-1 at 247 (citations to the record omitted).

Reeder argues the state postconviction court incorrectly interpreted Florida law. "But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." Wilson v. Corcoran, 562 U.S. 1, 16 (2010). The Supreme Court has repeatedly emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68 (1991). The Court thus accepts as correct the state court's determination that Reeder's 1992 conviction for attempted first degree murder is a valid conviction under Florida law.

Reeder fails to show his HVFO sentence violated any right guaranteed by the Constitution or other federal law. Ground Four is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.
2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.
3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

filed in this case. Such termination shall serve as denial of the motion.[2]

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

c:
Edward Reeder, 897209
Counsel of Record

---

[2] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.